David Bober
507 12th Ave.
Belmar, NJ 07719
(908) 868-1688
david.bober@yahoo.com



August 28, 2017

Clerk of the Court
U.S. District Court for the District of New Jersey
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Room 1050
Camden, NJ 08101

Re:   Objection to the settlement in *Filannino-Restifo v.*
*TD Bank, N.A.*, No. 16-cv-2374

Dear Clerk of Court:

I write respectfully to inform the Court that I object to the proposed settlement in the civil action captioned *Filannino-Restifo v. TD Bank, N.A.*, No. 16-cv-2374, and the other related class actions. I am a class member; specifically, I am a longtime customer of TD Bank (checking account number         and I had numerous Penny Arcade transactions during the class period. I do not have documentation of my transactions, but I estimate that they totaled somewhere between $500 and $1,000. For several years, at the end of the day I typically would place whatever coins were in my pocket in a large jar in my house, and every so often my children and I would take the jar to the TD Bank on Route 35 in Wall Township, New Jersey, and use the Penny Arcade machine to count them (it is possible that on one or two occasions I went to other TD Bank locations). I would then transfer whatever amount was in the jar to college-savings accounts or other accounts that I keep for my children.

I object to the settlement because it provides virtually no benefit to class members, and actually appears to harm us by depriving us of access to free, accurate coin counting machines. Let me explain: The complaint alleges that the Penny Arcade machines "fail to accurately count the coins placed in them" and at least in some cases were inaccurate by "almost 15%." *See* Complaint (Docket No. 1) ¶ 2. Yet the proposed settlement provides for a payment to class members of only .26% of their transaction amounts. So I can only reach one of two conclusions. One possibility, which seems rather unlikely, is that the allegations in the complaint were correct and the machines were wildly inaccurate by as much as 15%. If that is the case, the settlement

is far too little, class members should be entitled to much more, and I object for reasons that I trust are self-evident. I say this possibility is "unlikely" because I presume that if the machines were actually as inaccurate as the complaint alleges, the lawyers who purport to represent me, and whose compensation is based in part on how much money they recover for the class, would not be settling for .26%.

The other possibility, which seems far more likely, is that the machines were actually quite accurate. On that front, I note that the notice to the class states that the .26% figure was "based on extensive third-party testing of machine accuracy." I note further that the settlement agreement appears to indicate that the machines were actually *more* accurate than .26%. Apparently, TD Bank hired a consultant, which "tested over 1,000 machines," twice each, with "different amounts and values of coins," and discovered a "net undercount of 0.117% for Test A and a net undercount of 0.090% for Test B." *See* Settlement Agreement (Docket No. 33-2) ¶ 17. Plaintiffs' expert tested nineteen machines, and "this testing did not yield appreciable differences." *Id.* ¶ 15. In other words, the available evidence seems to indicate that, contrary to the allegations in the complaint, these machines were quite accurate (if my math is right, accurate to within about a dime per hundred dollars counted).

If the machines are accurate within about .1%, then what has been gained by this settlement? Well, assuming I used these machines for about a thousand dollars' worth of coins, I can expect to have $2.60 returned to me. But in the future I will no longer have access to free, accurate coin-counting machines,[1] and I will be forced to either spend time on the tedious task of counting and rolling coins (a process that, I would wager, is significantly less accurate than the .1% error attributed to these machines), or I will have to pay 8% at Coinstar or similar machines that compete with the TD Bank machines.

Needless to say, I am not pleased with these terms. If these machines were as accurate as the notice says they were, they provided a valuable benefit to TD Bank customers, and there is no reason for them to be removed from TD Bank locations as a condition of this settlement. It seems to me that a much more reasonable settlement would be to put all the machines back in the stores with a notice stating "extensive third-party testing has determined that these machines are accurate to within .26%." That way, customers can make an informed decision. I suppose that some customers might rather count their own coins than risk losing .26% of their coin hoards to

---

[1]     The notice to the class states: "TD Bank has agreed not to resume using the Penny Arcade coincounting machines that are the subject of the Settlement to provide customer self-service coin-counting in TD Bank Stores." This is somewhat ambiguous; if it means that TD Bank agrees not to resume using the "Penny Arcade" machine because it intends to begin using some other, even-more-accurate coin-counting machine, then many of my concerns in this letter are allayed and I would likely withdraw my objection.

machine inaccuracies, but I suspect that most people would probably decide that a potential inaccuracy of .26% is a great deal, considering the time and hassle saved, and that other similar machines charge 8%.

I also object to the proposed plaintiffs' counsel fee of $1.9 million, which strikes me as too high considering that the available evidence seems to indicate that there was no fraud here, and that this settlement, by depriving TD Bank customers of highly accurate free coin-counting machines, has left us worse off than we were before. Speaking as a class member, I wish this class action had never been filed. I would rather have continued access to accurate-within-.26% Penny Arcade machines than .26% of my transactions back. Assuming these machines were as accurate as the "extensive third-party testing" says they were, this settlement does not benefit me. It harms me.

Finally, I understand that I can exclude myself from the settlement, but I don't think that is a meaningful alternative for me or for the vast majority of class members. Given that it seems that the machines were accurate within .26%, and that the alternative for class members was to either spend time on the tedious task of counting and rolling coins or pay 8% at other machines, I doubt that class members were damaged at all, so if I opted out I'd probably have no case. But even if we were damaged to the tune of something like 10% or 15% as alleged in the complaint, it would make no economic sense for me to opt out and pursue a lawsuit on my own. And I am sure that the same is true for virtually every class member, unless someone out there was using Penny Arcade machines to count millions of dollars' worth of coins. So I am left with no choice but to remain in the class and object.

Here's the other information that the notice says I have to provide:

*Information about objections you or your lawyer have made in other class action cases*: I don't believe I have ever objected to a class action settlement before. I don't have a lawyer.

*Any lawyers who are representing you in your objection, or who have previously represented you in your objection*: I am not represented and I have never before been represented in any objection.

*Whether you will attend or intend to testify (speak) at the Final Approval Hearing*: I plan to attend and I will testify (or speak) if the Court permits me to. I will send my "Notice of Intention to Appear" under separate cover.

*Any lawyers who will represent you at the Final Approval Hearing*: No one will represent me.

*Any witnesses you will ask to testify in support of your objection at the Final Approval Hearing*: No witnesses apart from me.

*Your signature.* See below.

Thank you for your time and attention and for considering this objection.

Respectfully submitted,

David Bober

cc:     Stephen P. DeNittis
        DeNittis Osefchen Prince, P.C.
        Five Greentree Centre
        Suite 410
        525 Route 73 N.
        Marlton, NJ 08053

        David S. Lesser
        WILMER CUTLER PICKERING
        HALE AND DORR LLP
        7 World Trade Center
        250 Greenwich Street
        New York, NY 10007

David Bober
507 12th Ave.
Belmar, NJ 07719



RECEIVED
SEP -
AT 8:30
WILLIAM T. WALSH CLERK

Clerk of the Court
U.S. District Court for the District of New Jersey
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Room 1050
Camden, NJ 08101