**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

REGINA C. FILANNINO-RESTIFO, on Behalf of
Herself and All Others Similarly Situated,

                                  Plaintiff,

        -vs.-

TD BANK, N.A.,

                                 Defendant.

Case No.: 16-2374 (JBS-JS)

---

DAVID DIAZ and RYAN FRANCO, Individually
and on Behalf of All Others Similarly Situated,

                                Plaintiffs,

        -vs.-

TD BANK, N.A.,

                                 Defendant.

Case No.: 16-2395 (JBS-JS)

---

NONA LUCE, on Behalf of Herself and All Others
Similarly Situated,

                                Plaintiff,

        -vs.-

TD BANK, N.A.,

                                 Defendant.

Case No.: 16-2621 (JBS-JS)

---

DAVID SPECTOR, on Behalf of Himself and All
Others Similarly Situated,

                                Plaintiff,

        -vs.-

TD BANK, N.A.,

                                 Defendant.

Case No.: 16-2682 (JBS-JS)

DAVID McENERNEY, on Behalf of Himself and
All Others Similarly Situated,

                       Plaintiff,

        -vs.-

TD BANK, N.A.,

                    Defendant.

Case No.: 16-2618 (JBS-JS)

---

CHRISTINE KRULAN, Individually and on
Behalf of All Other Persons Similarly Situated,

                    Plaintiffs,

        -vs.-

TD BANK, N.A.,

                    Defendant.

Case No.: 16-02919 (JBS-JS)

---

JUAN CARLOS MACIAS, Individually and on
Behalf of All Other Persons Similarly Situated,

                    Plaintiffs,

        -vs.-

TD BANK, N.A.,

                    Defendant.

Case No.: 16-03420 (JBS-JS)

---

JEFFREY FEINMAN, Individually and on Behalf
of All Other Persons Similarly Situated,

                    Plaintiffs,

        -vs.-

TD BANK, N.A.,

                    Defendant.

Case No.: 16-2621 (JBS-JS)

**BRIEF IN SUPPORT OF MOTION FOR**
**FINAL APPROVAL OF CLASS SETTLEMENT**

## **TABLE OF AUTHORITIES**

### **CASES**

**Page(s)**

*Ace Heating & Plumbing Co. v. Crane Co.,* 453 F.2d 30, 34 (3d Cir. 1971)........................12

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)........................12, 15, 16, 18, 19

*Baby Neal v. Casey*, 43 F.3d at 57.................................................................17, 18

*Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1314 n.16 (3d Cir. 1993)..........................13, 24

*Bredbenner v. Liberty Travel, Inc.,*
2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011)..............................14, 22, 27, 30

*Bullock v. Administrator of Kircher's Estate*, 84 F.R.D. 1, 10-11 (D.N.J. 1979)....................22

*Careccio v. BMW of N. Am. LLC*, 2010 WL 1752347 (D.N.J. Apr. 29, 2010)......................22

*Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88, n.14 (1981).....................................13

*Chiang v. Veneman*, 385 F.3d 256, 265 (3d. Cir. 2004)........................................17

*Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 651 (N.D. Tex. 1978),
*vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980)........................................28

*Coleman v. Commonwealth Land Title Ins. Co.*, 318 F.R.D. 275 (E.D. Pa. 2016)...................20

*Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 585 (D.N.J. 2010)............................29

*Eggleston v. Chi. Journeyman Plumbers Local Union No. 130 U.A.,*
657 F.2d 890, 896 (7th Cir. 1981)..........................................................29

*Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010)....................................13

*Fisher Bros. v. Phelps Dodge Indus., Inc.*, 604 F.Supp. 446, 452 (E.D. Pa. 1985)..................12

*Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 439, 444 (E.D. Pa. 2008)............................14

*Georgine v. Amchem Product, Inc.*, 83 F.3d 610, 631 (3d Cir. 1996)................................17

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)......................21, 22, 23, 24, 26, 29, 30, 31

*Hall v. AT&T Mobility LLC*, 2010 WL 4053547, at *7 (D.N.J. Oct. 13, 2010)....................23

*In re Am. Family Enters.*, 256 B.R. 377, 421 (D.N.J. 2000)........................................15, 21

*In re Baby Prods. Antitrust Litig.*, 708 F.3d at 174.................................................33

*In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235 (D.N.J. 2000),
*aff'd* 264 F.3d 201 (3d Cir. 2001)...................................................................15, 34

*In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)..............4, 22, 23, 24, 27, 28, 29

*In re Community Bank of N. Va.*, 418 F.3d 277, 299 (3d Cir. 2005)...................12, 15, 16, 19

*In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*,
269 F.R.D. 468, 484 (E.D. Pa. 2010).............................................................13, 24, 30

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768, 784 (3d Cir. 1995)..............................12, 13, 14, 18, 21, 22, 23, 26, 27, 29, 30

*In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 187 (D.N.J. 2003)........................19, 20

*In re Pet Food*, 629 F.3d at 350.........................................................................31

*In re Prudential Ins. Co. of Am. Sales Practices Litig.,*
962 F. Supp. 450, 534 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998)........................14, 24

*In re Prudential Ins. Co. of Am. Sales Practices Litig.,*
148 F.3d 283, 308 (3d Cir. 1998)...................................15, 16, 17, 18, 19, 20, 23, 28, 31, 32

*In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 89 (D.N.J. 2001)...................27

*In re Sch. Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1990)....................................12

*In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 256 (D. Del. 2002),
*aff'd* 391 F.3d 516, 537 (3d Cir. 2004)...........................................................28, 29

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004).........12, 15, 16, 19, 30

*Khoday v. Symantec Corp.*, 2016 WL 1637039, at *13 (D. Minn. Apr. 5, 2016)....................25

*Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995)...........................22

*Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 587 (3d Cir. 1999).....................................12

*McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 460 (D.N.J. 2008)................................23

*McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 650-51 (E.D. Pa. 2015).....................33

*McGee v. Cont'l Tire N. Am., Inc.*, 2009 WL 539893, at *4 (D.N.J. Mar. 4, 2009)................24

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)............................33

*Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625, 630 (9th Cir. 1982)...............15

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985)......................................33

*Slade v. Shearson, Hammill & Co.*, 79 F.R.D. 309, 313 (S.D.N.Y. 1978)...........................22

*Stewart v. Abraham*, 275 F.3d 220, 226-227 (3d Cir. 2001).....................................16, 17

*Stoetzner v. U. S. Steel Corp.*, 897 F.2d 115, 119 (3d Cir. 1990).....................................24

*Sullivan v. DB Invs.*, 667 F.3d 273, 320 (3d Cir. 2011)..........................................14, 19

*Vasco v. Power Home Remodeling Group LLC*, Case No. 15-cv-4623, ECF. No. 43..............25

*Walsh v. Great Atl. & Pac. Tea Co.*, 96 F.R.D. 632, 642-43 (D.N.J.), *aff'd*, 726 F.2d 956 (3d Cir. 1983)............................................................13

*Walsh v. Great Atl. & Pac. Tea Co.,* 726 F.2d 956, 965 (3d Cir. 1983).............................12

*Weiss v. Mercedes-Benz of N. Am.*, 899 F. Supp. 1297, 1300-01 (D.N.J. 1995)...........13, 24, 27

*Weiss v. York Hosp.*, 745 F.2d 786, 809 (3d Cir. 1984)...............................................16

*Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397, 406 (D.N.J. 1990)..........................16

## STATUTES

**Page(s)**

Fed. R. Civ. P. 23(e).......................................................................12, 33, 34

Fed. Rule Civ. P. 23(e)(1)(B)...............................................................33, 34

Rule 23...................................................................................12, 15, 16

Rule 23(a)...........................................................................12, 15, 16, 21

Rule 23(a)(1)...................................................................................16

Rule 23(a)(2)...................................................................................17

Rule 23(a)(3)...................................................................................17

Rule 23(b)..................................................................................................12, 15

Rule 23(b)(3)...................................................................................15, 16, 19, 20, 21

Rule 23(c)(2)...........................................................................................................35

Rule 23(e)...............................................................................................................21

## OTHER

Page(s)

MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.641 (2004)...................14, 33, 34

## I.    INTRODUCTION

On July 12, 2017, this Court entered an Order Granting Preliminary Approval of Settlement (the "Order") between Plaintiffs Regina C. Filannino-Restifo, David Diaz, Ryan Franco, Nona Luce, David Spector, David McEnerney, Christine Krulan, Juan Carlos Macias, Crossroad Foundation, Andrew Sobczak, Alexis Mullen, Tracy Olechowski, and Jeffrey Feinman (herein "Plaintiffs" or "Class Representatives") and Defendant TD Bank, N.A. (herein "TD Bank" or "the Bank"), which preliminarily approved the Settlement Agreement[1] ("Agreement") and conditionally certified the following class for settlement purposes:  all persons in the United States who, between April 11, 2010 and Preliminary Approval, used a TD Bank Penny Arcade machine to exchange coins for a credit to a TD Bank Account or for cash.  Excluded from the Settlement Class are all current TD Bank employees, officers and directors, counsel for TD Bank, Class Counsel, the judges presiding over the Actions, and the immediate family members of such judges. (ECF No. 43 at ¶5).  In doing so, the Court preliminarily determined that the Settlement was "the product of serious, informed, non-collusive, and good faith negotiations between the parties" that "falls well within the range of reason."  *Id.* at ¶3.

In light of the overwhelmingly favorable reaction of the Class, the significant benefits made available by the Settlement, and in order to avoid the burden, expense, inconvenience, and uncertainty of continued litigation, Plaintiffs now ask the Court to grant final approval to the Settlement.  It is in the best interest of the Plaintiffs and the Class to resolve and settle this litigation pursuant to terms of the Settlement.  Tellingly, notice was sent directly by postcard or email to

---

[1] The Settlement Agreement is attached as Exhibit "A" to the Declaration of Stephen P. DeNittis, and was previously filed with the Court. (ECF No. 33-2) and for the Court's convenience is attached to the Declaration of Stephen P. DeNittis in Support of Final Approval as Exhibit A.  To the extent not otherwise defined herein, all capitalized terms have the same meaning as set forth in the Agreement.

approximately 5.1 million Account holders for whom contact information was available, with successful delivery of the vast majority of those postcards (94%) and emails (98%). Over 5 million records (TD Bank Accounts) were designated for automatic payment, and over 8,500 claims were timely filed as of October 27, 2017.   Yet, there were only 395 requests for exclusion, potentially relating to 521 Settlement Class Members, approximately 0.0001% of the number of Accounts designated for payment, and 5 objections. The vast disparity between the number of class members who received notice of the Settlement and the number of objectors is a clear affirmation of the quality of the settlement. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001). Accordingly, this Court should grant final approval to the Settlement and direct that the benefits be provided to the Class.

## II.    BACKGROUND

This consolidated litigation concerns TD Bank's coin-counting machines, known as Penny Arcades.  The Penny Arcade machines were introduced in 1999 by TD Bank's predecessor, Commerce Bank, N.A.  The Penny Arcade machines were available to TD Bank's customers and the general public.  When a consumer put coins into the Penny Arcade machine, the machine would sort the coins by denomination and count their value.   The machine then issued a printed transaction receipt to the consumer purporting to show the amount counted.  The consumer could redeem the receipt with a teller for cash in that amount or, if the consumer was a TD Bank customer, deposit that amount into his or her account.  TD Bank customers used the Penny Arcades free of charge.  Beginning in 2010, non-customers were charged a fee (8% as of 2016).  TD Bank promoted the Penny Arcade as "one of the bank's most unique features" in delivering "the convenience for which TD is so well known."

In April 2016, it came to light that TD Bank's Penny Arcade machines allegedly had been shortchanging users for years. On April 6, 2016, NBC's *Today Show* ran a story on the undercounting, and reported that all of the machines they tested in the New York City area had undercounted the test coins, by as much as 14%. After news organizations widely reported the alleged problem, numerous customers and other consumers who had used TD Bank's Penny Arcades prior to April 2016 commenced this consolidated action to recover damages for the losses they sustained due to the undercounting. Shortly thereafter, TD Bank took the machines out of service for evaluation and testing. On May 19, 2016, TD Bank announced that, it was permanently decommissioning the machines.

The Settlement was reached after substantial discovery and extensive negotiations between experienced and informed counsel (with the assistance of a well-respected mediator, former United States Magistrate Judge Joel B. Rosen), and easily meets the standard for final approval. Plaintiffs and Class Counsel – based upon their evaluation of the facts, applicable law, and their recognition of the substantial risk and expense of continued litigation – believe this Settlement to be fair, adequate and reasonable and submit that it is in the best interests of the class.

## A. Procedural History

On June 7, 2016, the following actions were consolidated in the District of New Jersey ("DNJ") before Judge Simandle for purposes of discovery, case management and alternative dispute resolution: *Macias, et al. v. TD Bank, N.A.*, 1:16-cv-3420; *Filannino-Restifo v. TD Bank, N.A.*, 1:16-cv-2374; *Feinman v. TD Bank, N.A.*, 1:16-cv-3435; *Diaz and Franco v. TD Bank, N.A.*, 1:16-cv-2395; *Luce v. TD Bank, N.A.*, 1:16-cv-2621; *Spector v. TD Bank, N.A.*, 1:16-cv-2682; *McEnerney v. TD Bank, N.A.*, 1:16-cv-02918; and *Krulan v. TD Bank, N.A.*, 1:16-cv-2919 (collectively the "Consolidated Actions"). The Consolidated Actions bring claims under state

consumer fraud laws and related statutes.  On July 12, 2017, the Court issued an order appointing the following Representative Plaintiffs as Class Representatives: Regina C. Filannino-Restifo, David Diaz, Ryan Franco, Nona Luce, David Spector, David McEnerney, Christine Krulan, Juan Carlos Macias, Crossroad Foundation, Andrew Sobczak, Alexis Mullen, Tracy Olechowski, and Jeffrey Feinman.   Likewise, the Court appointed Michael Criden of Criden & Love, P.A. ("Criden"), Jeffrey Smith of Wolf Haldenstein Adler Freeman & Herz, LLP ("Wolf"), John Radice of Radice Law Firm ("Radice"), and Bruce H. Nagel of Nagel Rice, LLP ("Nagel"), as Class Counsel.

### B.  Discovery

Plaintiffs conducted substantial discovery prior to entering into the Settlement, including propounding discovery requests upon TD Bank and responding to discovery requests propounded by TD Bank.   In response to Plaintiffs' discovery requests, TD Bank produced bank-wide information, for most of the Class Period, disclosing the number of Penny Arcade transactions, how many of those transactions were conducted by TD Bank customers as opposed to non-customers, the aggregate value of the redeemed receipts, and the aggregate amount of fees that TD Bank collected from non-customers on their transactions.

Plaintiffs also obtained data disclosing: (a) all of the Bank's stores that had one or more Penny Arcade machines, including store addresses as of July 22, 2016; (b) the serial numbers of each Penny Arcade machine in each store; (c) the average value of coins deposited in the Penny Arcade machines at each store, from November 2010 to March 2016; and (d) the value of the coins of each denomination counted at each store from May 2015 through April 2016.

Plaintiffs similarly obtained the Bank's policies and procedures for collecting, counting and reconciling coins with receipts and for checking the accuracy of the machines. The Bank also

disclosed the number of consumer complaints concerning alleged miscounting by the Penny Arcade machines over the past three and a half years; information concerning how the Penny Arcade machines were manufactured, operated, and maintained; and information concerning how the coins were collected from the Penny Arcade Machines.

TD Bank retained Deloitte Transactions and Business Analytics, LLP ("Deloitte") to conduct testing of the Penny Arcade machines.  Deloitte developed a testing protocol to analyze potential error rates associated with the Penny Arcade machines.  The testing protocol consisted of: (i) the identification of the population of machines to be tested; (ii) a statistically-based approach to determine the coin amounts selected for testing the machines; and (iii) detailed procedures and training to aid in the execution of testing. TD Bank tested over 1000 machines representing approximately 90% of all machines.  Pursuant to the Deloitte protocol, TD Bank tested each machine twice (Test A and Test B), with different amounts and values of coins.  Those tests yielded a net undercount of 0.117% for Test A and a net undercount of 0.090% for Test B.

Plaintiffs retained David Sise as an expert regarding the Penny Arcade machines.  Mr. Sise was employed as a Field Engineer by Bancsource for close to ten years.   As part of his responsibilities for over a decade, Mr. Sise repaired and maintained the same type and model of coin counting machines as the Penny Arcades including the Mach 3 through Mach 12 version coin counting machines.  Plaintiffs, along with Mr. Sise, coordinated the testing of a number of Penny Arcade machines throughout the region.   Mr. Sise, working with Plaintiffs, established and implemented a testing protocol to assess error rates.  Mr. Sise and at least one representative of Interim Class Counsel attended each of the tests.  Mr. Sise tested a sampling of nineteen machines and this testing did not yield appreciable differences from Deloitte's results.

Prior to finalizing the proposed Settlement Agreement, Plaintiffs retained experts Allise Wachs, Ph.D., a statistician with a focus on product design and machinery operations, and Abba M. Krieger, Ph.D., a Professor of Statistics at the University of Pennsylvania, to review Deloitte's data and testing methodology to determine its reliability. After review of Deloitte's data and testing methodology, both experts concluded that such data and testing were reliable for purposes of entering into the Settlement Agreement.

## C. The Settlement

The Parties participated in arm's-length mediation sessions on September 30, October 18, and November 2, 2016, with the Honorable Judge Joel B. Rosen, Retired United States Magistrate Judge, of Montgomery, McCracken, Walker, & Rhoads, LLP serving as mediator. On November 2, 2016, the Parties reached an agreement in principle to settle the Actions. Subsequently, the Parties participated in a fourth mediation session, on January 18, 2017, with Judge Rosen, at which the Parties agreed on the payment of attorneys' fees and costs, subject to the Court's approval. The Settlement Agreement was fully executed on May 20, 2017. On June 7, 2017, the parties executed an Addendum to Settlement Agreement reducing the amount of Attorneys' Fees that Class Counsel may seek from the Court, and increasing the amount of Service Awards for Plaintiffs that Class Counsel may seek from the Court.

The Settlement provides the Settlement Class with significant monetary relief, and provides for a recovery to the proposed class of 0.26%, which *exceeds* the net undercount in each of TD Bank's tests and in Plaintiffs' tests. In addition, TD Bank agreed not to resume using the Penny Arcade machines that are the subject of the Actions to provide customer self-service coin-counting in TD Bank branches.[2]

---

[2] The Settlement does not preclude TD Bank from providing other coin counting services.

The proposed settlement creates a $7.5 million Settlement Fund to be distributed in accordance with the Settlement as follows: (¶58, 95)

(1) Settlement Class Members who used the Penny Arcade machines during the Class Period as a TD Bank Account holder, and for whom the Parties can, with reasonable effort, obtain records of their transactions, will receive an Automatic Distribution from the Settlement Fund. Each such Settlement Class Member will receive an automatic distribution equal to (a) the aggregate amount of such Settlement Class Member's Penny Arcade transactions, per TD Bank's records; multiplied by (b) a Multiplier of 0.26% (a percentage consistent with both the Plaintiffs' expert's findings and the Bank's expert's findings).

(2) Settlement Class Members who used the Penny Arcade machines during the Class Period while a Non-Account holder may submit a written request (a "Claim") to the Settlement Administrator, as set forth in the Settlement Agreement, seeking a distribution from the Settlement Fund. Any distribution received in response to such Claim (a "Claim Distribution") shall be in addition to and not exclusive of any Automatic Distribution paid made to the same Settlement Class Member, provided that no Settlement Class Member may submit a Claim for any Penny Arcade transaction that occurred while said Settlement Class Member had an account with TD Bank. If the Settlement Administrator approves a Claimant's Claim, the total dollar amount of the Claimant's Claim Distribution shall be determined by multiplying the Multiplier by the verified dollar amount of that Claimant's Penny Arcade transactions. If the Claimant cannot provide documentation to substantiate the claimed amount, the maximum dollar amount of that Claimant's Penny Arcade Transactions shall be considered to be $500.00.

(3) In addition to the distributions set forth above, each Settlement Class Member shall receive a pro rata share of the Residual Settlement Fund, if any, remaining after payment of the Automatic Distributions, Claim Distributions and any award of litigation costs to Class Counsel.

(4) Finally, any remaining amounts in the Settlement Fund after payments of the Automatic Distributions, Claim Distributions, Residual Settlement Fund distribution, and litigation costs shall be distributed through a residual *cy pres* program.

The Settlement Fund will be used to pay Litigation Costs incurred in connection with the case, not to exceed $100,000.00. TD Bank will pay all administration costs, separate from the Settlement Fund. TD Bank agreed to pay attorneys' fees not to exceed $1,935,000.00, and service

awards in an aggregate amount of $65,000, subject to court approval. These payments will be made separate and apart from the Settlement Fund and thus will not reduce the value of the settlement to the class.

**D. Preliminary Approval and Class Notice**

On July 12, 2017, the Court granted preliminary approval to the proposed Settlement, approved the appointment of Garden City Group, LLC ("GCG") as the Settlement Administrator, and approved the form and manner of notice to be provided to the Class. (ECF. No. 43, ¶¶8-9). The comprehensive Notice Program consisted of a Mailed Notice, Publication Notice, and Long-Form Notice on the Settlement Website. *Id*. at ¶8. The parties used "reasonable diligence to identify potential class members and an associated address in TD Bank's records" and directed GCG to use this information to disseminate notice to Class Members. *Id*. at ¶9.

Pursuant to the Court's Order, GCG disseminated a copy of the notice to settlement class members in accordance with the Notice Program,[3] which this Court found to be the "best notice practicable under the circumstances" and consistent with the requirements of due process. *Id*. As detailed in the Affidavit of Shandarese Garr, Senior Vice President of GCG (ECF No. 38-1), the Notice Program was engineered through a combination of direct notice, internet advertising, and print media, which included:

> (1) direct email notice to certain customers who had Penny Arcade transactions and for whom TD Bank, N.A. has an email address;
> (2) direct mail notice by postcard for all known customers who had Penny Arcade transactions and for whom TD Bank, N.A. has a mailing address and were not sent Notice via email;
> (3) national print notice in *People* magazine;
> (4) geo-targeted banner notice on the internet in English and Spanish;
> (5) a settlement website; and
> (6) a toll-free information telephone number.

---

[3] The Affidavit of Shandarese Garr (ECF No. 38-1) discusses in detail the implementation of the Notice Program and dissemination of the Class Notice.

As of November 27, 2017, the dedicated toll-free number GCG set up to field calls from Class Members had received over 23,536 calls, and the case administration website received 227,027 visits.   GCG will provide an Affidavit of Compliance with Notice Requirements and Report of Exclusion and Objections, as ordered by this Court, by December 26, 2017.  *Id*. at ¶15.

### E.  Claims, Requests for Exclusion and Objections

The deadline for claim form submissions, requests for exclusion, and objections was October 27, 2017.  The overwhelming majority of Settlement Class Members do not have to do anything to receive the benefits provided by the Settlement, as they will receive their settlement consideration automatically.  A small minority of Settlement Class Members, for whom TD Bank does not have reasonably accessible electronic data to permit Settlement Class Counsel's expert to identify them and/or to automatically calculate their damages pursuant to the allocation formula set forth in the Agreement, had the opportunity to file Claims seeking a distribution from the Settlement under the same allocation formula being used for their fellow Settlement Class Members.  Over 5 million records (TD Bank accounts) were designated for automatic payment, and over 8,500 claims were timely filed by October 27, 2017.  Yet, there were only 395 requests for exclusion, potentially relating to 521 Settlement Class Members, approximately .0001% of the number of accounts designated for payment, and 5 objections.[4]

---

[4] Certain objections either do not meet the objection criteria as set forth by the Court, *see* ECF No. 43 at ¶12, and/or are technically exclusions (not objections), and thus lack standing. Pursuant to this Court's Order, GCG will provide the Parties with copies of all completed opt-out notifications, and a final list of all who have timely and validly excluded themselves from the Settlement Class, which Class Counsel shall move to file under seal with the Court no later than 10 days prior to the Final Approval Hearing. *See* ECF No. 43 at ¶13.

III.   **LEGAL ARGUMENT**

   **A. The Proposed Settlement  Should be Approved by the Court**

   Plaintiffs move under Rule 23 for final approval of the Settlement and certification of a class for settlement purposes only.  As discussed in detail below, final approval of a class action settlement involves two fundamental inquiries.   First, the Court must determine whether a settlement class can be certified under Rule 23(a) and at least one prong of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The second inquiry is whether the proposed settlement appears "fair, reasonable and adequate." Fed. R. Civ. P. 23(e); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004). In determining whether to approve a settlement, the Third Circuit has noted that "there is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *Id.* at 535; *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."); *In re Sch. Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1990) (noting Third Circuit's policy of "encouraging settlement of complex litigation that otherwise could linger for years"); *In re Community Bank of N. Va.*, 418 F.3d 277, 299 (3d Cir. 2005) ("'all Federal Circuits recognize the utility of … settlement classes' as a means to facilitate the settlement of complex nationwide class actions"). Approval of a proposed class action settlement is a matter within the sound discretion of the court. *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 587 (3d Cir. 1999). *See also Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 965 (3d Cir. 1983); *Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30, 34 (3d Cir. 1971). While this Court has discretion in determining whether to approve the Settlement, it should be hesitant to substitute its judgment for that of the parties who negotiated the Settlement. *See Fisher Bros. v.*

*Phelps Dodge Indus., Inc.*, 604 F.Supp. 446, 452 (E.D. Pa. 1985). "Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement. . . . They do not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88, n.14 (1981); *Walsh v. Great Atl. & Pac. Tea Co.*, 96 F.R.D. 632, 642-43 (D.N.J.), *aff'd*, 726 F.2d 956 (3d Cir. 1983). There is a strong judicial policy in favor of resolution of litigation before trial particularly in "class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 484 (E.D. Pa. 2010) (quoting *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010)); *see also GM Trucks*, 55 F.3d 768. ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."). The *Ehrheart* court held:

> This presumption is especially strong in "class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *GMC Truck*, 55 F.3d at 784. The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings. . . . Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts [and] the parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial.

*Ehrheart*, 609 F.3d at 594-95; *see also Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1314 n.16 (3d Cir. 1993); *Weiss v. Mercedes-Benz of N. Am.*, 899 F. Supp. 1297, 1300-01 (D.N.J. 1995) ("[W]hen parties negotiate a settlement they have far greater control of their destiny than when a matter is submitted to a jury. Moreover, the time and expense that precedes the taking of such a risk can be staggering. This is especially true in complex commercial litigation."). Settlements enjoy a presumption that they are fair and reasonable when they are the product of arm's-length

negotiations conducted by experienced counsel who are fully familiar with all aspects of class action litigation. *See, e.g., GMC Trucks*, 55 F.3d at 785; *Sullivan v. DB Invs.*, 667 F.3d 273, 320 (3d Cir. 2011); *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 439, 444 (E.D. Pa. 2008) (stressing the importance of arm's length negotiations and highlighting the fact that the negotiations included "two full days of mediation"); *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011) ("A class settlement is entitled to an 'initial presumption of fairness' when '(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'") (quoting *GM Trucks*, 55 F.3d at 785); *see also* MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.641 (2004). Thus, although a court must evaluate a proposed settlement, the court may rely on the judgment of experienced counsel in doing so.

A fair, reasonable and adequate settlement is not necessarily an "ideal settlement." A settlement is, after all, "a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 534 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998) (citations omitted). As one court has noted:

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned . . . The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

> * * *

> Neither the district court nor this court is empowered to rewrite the settlement agreed upon by the parties. We may not delete, modify, or substitute certain provisions of the consent decree. Of course, the district court may suggest modifications, but ultimately, it must consider the proposal as a whole and as submitted. Approval must then be given or withheld. . . . In short, the settlement must stand or fall as a whole.

14

*Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625, 630 (9th Cir. 1982); *see also In re Am. Family Enters.*, 256 B.R. 377, 421 (D.N.J. 2000) ("Significant weight should be attributed 'to the belief of experienced counsel that the settlement is in the best interest of the class.'"); *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235 (D.N.J. 2000), *aff'd* 264 F.3d 201 (3d Cir. 2001).

In light of this public policy in favor of settlement generally and because this Settlement easily meets the Rule 23 requirements, the Settlement should be approved and the Settlement Class certified.

**B.  Class Certification Should be Granted for Settlement Purposes Under Rule 23**

Class certification under Rule 23 has two primary components. First, the party seeking class certification must first establish the four requirements of Rule 23(a): "(1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." *Warfarin Sodium II*, 391 F.3d at 527. Second, the Court must find that the class fits within one of the three categories of class actions set forth in Rule 23(b). *Community Bank*, 418 F.3d at 302. In the present case, Plaintiffs seek certification under Rule 23(b)(3), "the customary vehicle for damage actions." *Id.* Rule 23(b)(3) requires that common questions "predominate over any questions affecting only individual members" and that class resolution be "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem*, 521 U.S. at 592-93.

In making this analysis, the district court may take the proposed settlement into consideration. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 308 (3d Cir.

1998); *Community Bank*, 418 F.3d at 300. In this respect, there is one material difference

between the certification of litigation classes and settlement classes:

> Whether trial would present intractable management problems . . . is not a
> consideration when settlement-only certification is requested, for the proposal is
> that there be no trial.

*Amchem*, 521 U.S. at 620; *Community Bank*, 418 F.3d at 309. "The difference is key." *Warfarin*

*Sodium II*, 391 F.3d at 529 ("When dealing with variations in state laws, the same concerns with

regards to case manageability that arise with litigation classes are not present with settlement

classes, and thus those variations are irrelevant to certification of a settlement class.").

As discussed in detail below, all the Rule 23 requirements are met here. The Court was

correct in preliminarily certifying the Class for settlement purposes pursuant to Rules 23(a) and

(b)(3), and nothing has changed to alter the propriety of the Court's certification. Therefore, the

Class should now be finally certified.

### 1. The Rule 23(a) Factors Are Met

As discussed below, in light of the proposed Settlement, Plaintiffs and the Class meet the

requirements of Rule 23(a), which are commonly referred to as numerosity, commonality,

typicality, and adequacy of representation. *See Warfarin Sodium II*, 391 F.3d at 527.

### a. Numerosity

The numerosity requirement under Rule 23(a)(1) is satisfied where the class is so numerous

that joinder of all class members is impracticable. *In re Prudential Ins. Co.*, 148 F.3d at 309;

*Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397, 406 (D.N.J. 1990). There is no magic

number needed to satisfy numerosity. *See, Stewart v. Abraham*, 275 F.3d 220, 226-227 (3d Cir.

2001); *see also, Weiss v. York Hosp.*, 745 F.2d 786, 809 (3d Cir. 1984) (Ninety-two class members

sufficient to satisfy numerosity.)  Here, there were close to 1,200 Penny Arcade machines used at

TD Bank branches from April 2010 through April 2016. Discovery established that more than 30 million transactions took place at these machines. Indeed 2,409,695 notice packets were mailed and 2,687,284 notice packets were emailed in connection with this settlement, over 5,000,000 records were designated for automatic payment, and approximately 9,000 claims were filed.

### b. Commonality

To satisfy the commonality requirement under Rule 23(a)(2), plaintiffs must demonstrate that "'at least one question of fact or law' is common to each member of [the] prospective class." *Stewart v. Abraham*, 275 F.3d at 227. Class members do not have to share identical claims or claims arising from the same operative facts. *See In re Prudential Ins.*, 148 F.3d at 310; *Baby Neal v. Casey*, 43 F.3d. 48, 57 (3d Cir. 1994) (Factual differences in the claims of class members do not defeat certification). The commonality standard of Rule 23(a)(2) is not a high bar. *Chiang v. Veneman*, 385 F.3d 256, 265 (3d. Cir. 2004). Here, there are numerous common questions of law and fact, including:

- Whether all of TD Bank's Penny Arcades shortchanged customers;
- When TD Bank first became aware (or should have become aware) that its Penny Arcades were shortchanging customers;
- Whether the Penny Arcades' shortchanging customers is a violation of the New Jersey Consumer Fraud Act; and
- Whether TD Bank knew or should have known that its Penny Arcades were shortchanging customers.

Thus, commonality is satisfied.

### c. Typicality

In order to satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. *See Georgine v. Amchem Product, Inc.*, 83 F.3d 610, 631 (3d Cir. 1996). Typicality seeks to ensure that there are no conflicts between the class representative claims and the claims of the class members so that

the "named plaintiffs have incentives that align with those of absent class members." *Baby Neal v. Casey*, 43 F.3d at 57.

The Penny Arcades allegedly shortchanged customers who utilized the machines across-the-board. Class Representatives were all exposed to the same acts and/or omissions. The factual bases of TD Bank's alleged misconduct are common to the members of the Class and represent a common thread of allegedly fraudulent misconduct and deceptive trade practices resulting in injury to all proposed Class Members. Plaintiffs are asserting the same rights, making the same claims, and seeking the same relief for themselves and all other members of the proposed Class. The same is true of all members of the Settlement Class. Moreover, there are no individual facts unique to any of the proposed Class Representatives that would make their claims atypical. As there is no conflict between the Plaintiffs' claims and those of the class, the typicality requirement is clearly met.

### d. Adequacy

Adequacy of representation is a two-part inquiry that applies to both plaintiffs' counsel and plaintiffs. First, adequacy of representation asks whether plaintiffs' attorneys are qualified, experienced, and able to conduct the litigation. *In re Prudential*, 148 F.3d at 312 (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 800 (3d Cir. 1995)). Second, "it serves to uncover conflicts of interest between named parties and the class they seek to represent." *In re Prudential*, 148 F.3d at 312 (citing *Amchem Products v. Windsor*, 521 U.S. 591, 594 (1997)). In this case, Class Counsel is highly qualified, experienced, and able to conduct this litigation. The representative Plaintiffs share the interest of the proposed class in seeking relief related to the Penny Arcades.

### 2. The Rule 23(b)(3) Factors Are Met

The proposed class also meets the requirements of Rule 23(b)(3). Rule 23(b)(3) allows class certification of settlement classes where common questions of law and fact predominate over individual questions and class treatment is superior to individual litigation. When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and need not consider whether the case would be manageable if actually brought to trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1998); *Prudential*, 148 F.3d 283 at 321. In discussing predominance, the Third Circuit has reiterated that the focus of the "inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011) (en banc); *see also In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 187 (D.N.J. 2003); *In re Community Bank of N. Va.*, 418 F.3d 277, 309 (3d Cir. 2005). As indicated by the Supreme Court in *Amchem*, "predominance is a test readily met in certain cases alleging consumer fraud. . ." 521 U.S. at 625. This is such a case.

Here, the core questions relate to the alleged uniform defects in the Penny Arcade machines which result in undercounting of coins, TD Bank's alleged failure to disclose these defects, and its allegedly deceptive advertising and marketing in violation of consumer protection laws. Accordingly, the predominance prong of Rule 23(b)(3) is satisfied.

The second prong of Rule 23(b)(3) is also readily satisfied. Here, class resolution is superior to other available methods for the fair and efficient adjudication of the controversy. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533 (3d Cir. 2004). The superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those alternative available methods of adjudication." *Id.* at 534.

Rule 23(b)(3) sets forth certain factors that may be pertinent in considering whether a class action is a superior method by which to adjudicate a controversy. *See In re Mercedes-Benz*, 213 F.R.D at 186 ("The Rule sets forth a non-exhaustive list of factors to be weighed.") The factors include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigations of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

The Settlement Class satisfies the superiority requirements because of the large number of class members, and the relatively small value of each claim in relation to the expenses of prosecuting a lawsuit. The alternative to class treatment would be numerous individual lawsuits and/or multiple lawsuits for relatively small amounts of damages, or the class members would not obtain any relief. This would be uneconomical for potential plaintiffs because litigation costs would dwarf any potential recovery. By contrast, the class action vehicle "facilitates spreading of the litigation costs among the numerous injured parties and encourages private enforcement of the statutes." *Prudential*, 148 F.3d 283 at 315-316.

In the Third Circuit, there is an additional requirement of ascertainability; the class must be currently and readily ascertainable based on objective criteria, meaning that there must be a reliable and administratively feasible way to identify class members. *Coleman v. Commonwealth Land Title Ins. Co.*, 318 F.R.D. 275 (E.D. Pa. 2016). In this action, Account Holders can be easily identified by TD Bank's own records, and they account for more than 80% of the dollar volume and potential recovery. Non-Account Holders would have to submit Claim Forms and supply transaction dates, amounts, and supporting documentation in order to assert a total transaction amount larger than $500. Non-Account Holders who did not have supporting documentation

would have to provide transaction dates and dollar amounts under penalty of perjury, and could not receive a recovery larger than $1.30. In either case, TD Bank retains the right to dispute a claim or require additional information or documentation. The class is therefore ascertainable under the Third Circuit's requirements.

In sum, certification of the proposed Settlement Class is appropriate under Federal Rules of Civil Procedure 23(a) and 23(b)(3). This Court should adhere to its prior ruling certifying the proposed class for settlement purposes.

### C. The Settlement is Fair, Reasonable and Adequate

At the final approval stage, Rule 23(e) requires a determination by the district court that the proposed settlement is "'fair, reasonable and adequate.'" *GM Trucks*, 55 F.3d at 785. The Third Circuit has adopted a nine-factor test to determine whether a settlement is "fair, reasonable, and adequate." The elements of this test – known as the "*Girsh* factors" – are:

> (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

*GM Trucks*, 55 F.3d at 785 (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)). "These factors are a guide and the absence of one or more does not automatically render the settlement unfair." *Am. Family*, 256 B.R. at 418. The Settlement meets each of these factors, and thus, should be approved.

1. **The *Girsh* Factors Are Satisfied**

   a. **The Complexity, Expense and Duration of Continued Litigation Weigh in Favor of Final Approval**

The first *Girsh* factor is whether the settlement avoids a lengthy, complex and expensive continuation of litigation. This factor "captures the probable costs, in both time and money, of continued litigation." *Cendant II*, 264 F.3d at 233-34 (internal quotation marks omitted). "Where the complexity, expense, and duration of litigation are significant, the Court will view this factor as favoring settlement." *Bredbenner*, 2011 WL 1344745, at *11. Courts consistently have held that the expense and possible duration of litigation are factors to be considered in evaluating the reasonableness of a settlement. *Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995); *Slade v. Shearson, Hammill & Co.*, 79 F.R.D. 309, 313 (S.D.N.Y. 1978). *See also GM Trucks*, 55 F.3d at 812 (concluding that lengthy discovery and ardent opposition from the defendant with "a plethora of pretrial motions" were facts favoring settlements, which offer immediate benefits and avoid delay and expense). Under this analysis, courts consider the vagaries of litigation and "compare the significance of immediate recovery by way of compromise," *Bullock v. Administrator of Kircher's Estate*, 84 F.R.D. 1, 10-11 (D.N.J. 1979), to "the mere possibility of relief in the future, after protracted and expensive litigation." *Careccio v. BMW of N. Am. LLC*, 2010 WL 1752347 (D.N.J. Apr. 29, 2010). "It has been held proper 'to take the bird in hand instead of a prospective flock in the bush.'" *Bullock*, 84 F.R.D. at 11 (citation omitted). This factor undoubtedly weighs in favor of settlement.

Here, due to the factual and legal complexities involved in this case, continued litigation would have been rigorously contested by all Parties, which would necessarily be expensive and time-consuming.  During discovery, Plaintiffs retained and worked with three experts to test a sample of the Penny Arcade machines, perform statistical analyses of the test results and review

the statistical analysis of testing performed by TD Bank. This analysis would be relevant to maintain class litigation, and would likely be the subject of a costly battle of the experts at class certification and at trial. This fact alone weighs in favor of settlement approval. *See Hall v. AT&T Mobility LLC*, 2010 WL 4053547, at *7 (D.N.J. Oct. 13, 2010) (fact that trial would have required substantial expert testimony weighed in favor of approving settlement); *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 460 (D.N.J. 2008) (same).

Under all of the circumstances, a certain result now rather than an uncertain result years in the future, weighs in favor of approval of the Settlement. For these reasons, the first *Girsh* factor weighs in favor of final approval of the Settlement

### b.  The Reaction of the Class to the Settlement Favors Final Approval

The second *Girsh* factor "attempts to gauge whether members of the class support the Settlement." *Prudential II*, 148 F.3d at 318. In order to properly evaluate it, "the number and vociferousness of the objectors" must be examined. *GM Trucks*, 55 F.3d at 812. Generally, "silence constitutes tacit consent to the agreement." *Id.* (quotation omitted). Given the overall effectiveness of the notice program, which reached approximately 94% of the Settlement Class that were TD Bank Account holders, the fact that there were only 5 objections and 395 requests for exclusion, potentially relating to 521 Settlement Class Members,[5] is a strong indicator that the Settlement is fair, reasonable and adequate. *See, e.g., Cendant*, 264 F.3d at 234-35 (affirming trial court decision

---

[5] The submissions by Gregory Korn, Alexander Nerska, Neil Cohn, Maureen Donohue, Martin Moran, and George Singleton either do not meet the objection criteria as set forth by the Court, *see* ECF No. 43 at ¶12, and/or are technically exclusions (not objections), and thus lack standing. The submission by Jane Doe, postmarked October 30, 2017, is both untimely and does not meet the objection criteria as set forth by the Court. Pursuant to this Court's Order, GCG will provide the Parties with copies of all completed opt-out notifications, and a final list of all who have timely and validly excluded themselves from the Settlement Class, which Class Counsel shall move to file under seal with the Court no later than 10 days prior to the Final Approval Hearing. *See* ECF No. 43 at ¶13.

that class reaction was "extremely favorable," where 478,000 notices were sent, four objections were made, and 234 class members opted out).

Under *Girsh*, such a small number of exclusions and objections favor approval of a class action settlement agreement. *See Bell Atlantic*, 2 F.3d at 1314 n.15 (silence is "tacit consent" to settlement). "The Third Circuit has looked to the number of objectors from the class as an indication of the reaction of the class." *CertainTeed*, 269 F.R.D. at 485 (*citing Cendant II*, 264 F.3d at 234-35). A "paucity of protestors . . . militates in favor of the settlement," *See Bell Atlantic*, 2 F.3d at 1314; *see also Stoetzner v. U. S. Steel Corp.*, 897 F.2d 115, 119 (3d Cir. 1990) (objections by 29 members of a class comprised of 281 "strongly favors settlement"); *Prudential I*, 962 F. Supp. at 537 (small number of negative responses to settlement favors approval); *Weiss*, 899 F. Supp. at 1301 (100 objections out of 30,000 class members weighs in favor of settlement). The percentage of Class Members that object to the settlement is an appropriate gauge of the reaction of the class as a whole. *See id*. at 1313-14 (factor favors settlement where less than 30 of approximately 1.1 million shareholders objected); *McGee v. Cont'l Tire N. Am., Inc.*, 2009 WL 539893, at *4 (D.N.J. Mar. 4, 2009).

All of the objections here lack merit. One of the objections was filed by a lawyer who has historically injected himself into numerous class settlement objections. (ECF No. 49). The other 4 objections were filed by *pro se* individuals. (ECF Nos. 44, 46, 48, 53). The objections are riddled with inaccuracies and/or misunderstandings of the Settlement and basic class action jurisprudence.

First, the objection filed by attorney Brent Vullings (ECF No. 49) should be stricken or summarily denied. Vullings filed an objection on behalf of Erin Caligiuri (the wife of Vullings'

paralegal, Frank Caligiuri)[6] and American Realty Concepts ("Vullings Objection").  (ECF No. 49).

Specifically, Vullings asserts largely boilerplate arguments that mischaracterize the terms of the

Settlement and the circumstances of the litigation.  For example, the Vullings Objection is based

on the faulty premise that attorneys' fees and administration costs are paid from the Settlement

Fund. However, as set forth in the Notice, these expenses are to be paid by TD Bank, separate and

apart from the Settlement Fund.  Thus, the Settlement Fund will not be diminished, as the Vullings

Objection claims.  Further contrary to the Vullings Objection, Class Counsel submitted extensive

documents regarding the testing of the Penny Arcade machines.  *See* ECF No. 37 (attaching the

June 12, 2017 report of David Sise detailing his testing and inspection process and the Declaration

of Michael Brien (and supplemental declaration) detailing the testing and inspection process

performed by Deloitte on behalf of TD Bank), as well as the results of said testing).  Lastly, the

Vullings Objection claims regarding pre-1965 coins are unsubstantiated and baseless in light of

the fact that the expert testing took into account all coins.[7]  Ultimately, in any event, Vullings has

indicated that he does not plan to attend the final hearing.

Likewise, the objection filed by David Bober ("Bober Objection") (ECF No. 44) is based

on a faulty premise.  Mr. Bober expresses his desire to turn back time (before this action was filed)

in order to have continued access to the Penny Arcade machines, despite the machines' alleged

inaccuracies.  But TD Bank made its own decision to retire the Penny Arcade machines following

the *Today Show* expose, and there is no basis for Mr. Bober to argue that any different outcome in

---

[6] Vullings has filed numerous objections to class action settlements, and has specifically represented the Caligiuris in other class action settlement objections.  These objections have been deemed meritless by the district court.  *See, e.g., Khoday v. Symantec Corp.*, 2016 WL 1637039, at *13 (D. Minn. Apr. 5, 2016); *see also Vasco v. Power Home Remodeling Group LLC*, Case No. 15-cv-4623, ECF. No. 43 (overruling the Caligiuri objection as meritless).

[7] Even if true, this issue would cause an insurmountable ascertainability problem, further demonstrating the benefits of the Settlement.

this litigation would cause TD Bank to reinstate the machines. DeNittis Dec. ¶41. Many other banks have also phased out their coin counting machines due to a variety of reasons (in addition to potential inaccuracies), including waning customer demand.[8] Certainly, there was *no* guarantee TD Bank would continue to offer a free coin counting service to its customers regardless of this litigation. Mr. Bober further offers no legal support for his general objection regarding attorneys' fees.

The objection filed by Yuri Iozzo ("Iozzo Objection") (ECF No. 48) is also not viable. The theory raised in the Iozzo Objection is not appropriate for class-wide treatment as it relates to an isolated, individualized incident. Lastly, the objections filed by Robert Murray (ECF No. 46), and Michelle Yacuzzio (ECF No. 53) are meritless. Mr. Murray objects to the settlement on the basis that the inconvenience associated with not being able to use the free coin-counting machines outweighs the value of the settlement, which is based on the same faulty premise as described above in response to the Bober Objection. Ms. Yacuzzio seemingly objects to the settlement solely on the basis that she does not have supporting documentation for her claim, which evinces a misunderstanding of basic class action jurisprudence.

Here, the lack of any meaningful negative response to the Settlement reflects overwhelming support from the Class and demonstrates the quality and value of the Settlement.

### c.   The Stage of Proceedings Weighs in Favor of Final Approval

The stage of the proceedings and the amount of discovery completed is another factor that courts consider in determining the fairness, reasonableness and adequacy of a settlement. *GM Trucks,* 55 F.3d at 785; *Girsh,* 521 F.2d at 157. "This factor considers the degree of case

---

[8] *See* http://www.post-gazette.com/business/pittsburgh-company-news/2016/04/22/PNC-pulls-plug-on-coin-counting-machines/stories/201604220077.

development accomplished by counsel prior to settlement." *Bredbenner*, 2011 WL 1344745 at *12. "Through this lens," the Court of Appeals for the Third Circuit has written, "courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *GM Trucks*, 55 F.3d at 813.

Here, the Parties engaged in substantial discovery which included written discovery by both Parties. Further, TD Bank retained Deloitte to conduct testing of the Penny Arcade Machines. Plaintiffs also retained an expert, David Sise, to conduct testing of the machines. Plaintiffs subsequently retained experts to review Deloitte's data and testing methodologies prior to finalizing the proposed settlement. In addition, the Parties participated in four mediation sessions with Judge Rosen to reach the proposed settlement. In sum, the stage of proceedings weighs in favor of final approval.

### d. The Risks of Establishing Liability Weigh in Favor of Final Approval

This factor should be considered to "examine what potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them." *Cendant II*, 264 F.3d at 237, (quoting *GM Trucks*, 55 F.3d at 814). "By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *GM Trucks*, 55 F.3d at 814. "The inquiry requires a balancing of the likelihood of success if the case were taken to trial against the benefits of immediate settlement." *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 89 (D.N.J. 2001).

Although Class Counsel believe that the claims presented in this litigation are meritorious, they are experienced counsel who understand that the "the risks surrounding a trial on the merits are always considerable." *Weiss*, 899 F. Supp. at 1301. Defendant has zealously defended against

these claims, and would surely continue to do so if the case proceeded to trial. The Settlement here presents the Class with real relief now.  Indeed, because the Settlement provides the Class with almost all of the relief to which they would be entitled if they proceeded to trial, there can be no justification for exposing the Class's recovery to the risks of trial.  Such a consideration is not to be taken lightly, for as one court aptly noted, "no contested lawsuit is ever a 'sure thing.'" *Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 651 (N.D. Tex. 1978), *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980).

The risks and delays inherent in taking this case to trial viewed against the certainty of the proposed Settlement, weigh in favor of Settlement, particularly, as is the case here, one that provides the Class with substantial benefits that is fair,  reasonable and adequate. Further, although Plaintiffs are confident that their claims are legally sound, there is always the possibility that the Court may disagree. These risks include the risk of dismissal, denial of class certification or the granting of summary judgment. The Settlement provides substantial monetary benefits without the inherent risk of establishing liability at trial. Thus, these inherently unpredictable risks in establishing liability weigh in favor of settlement, particularly here, where the Settlement provides the Class with a substantial benefit that is not only fair, reasonable, and adequate, but an excellent result.

### e.   The Risks of Establishing Damages Weigh in Favor of Final Approval

"Like the fourth factor, 'this inquiry attempts to measure the expected value of litigating the action rather than settling it at the current time.'" *Cendant II*, 264 F.3d at 238. The court looks at the potential damage award if the case were taken to trial against the benefits of immediate settlement. *Prudential II*, 148 F.3d at 319. In *Warfarin Sodium I*, the trial court found that the risk of establishing damages strongly favored settlement, observing that "[d]amages would likely be

established at trial through 'a "battle of experts," with each side presenting its figures to the jury and with no guarantee whom the jury would believe.'" *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 256 (D. Del. 2002), *aff'd* 391 F.3d 516, 537 (3d Cir. 2004). Similarly, in *Cendant II*, the Third Circuit reasoned that there was no compelling reason to think that "a jury confronted with competing expert opinions" would accept the plaintiff's damages theory rather than that of the defendant, and thus the risk in establishing damages weighed in favor of approval of the settlement. 264 F.3d at 239. The same is true here. Thus, this factor weighs in favor of final approval.

### f. The Risks of Maintaining the Class Action through Trial Weigh in Favor of Final Approval

Because the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the class action, *GM Trucks*, 55 F.3d at 817, the Court must measure the likelihood of obtaining and maintaining a certified class if the action were to proceed to trial. *Girsh*, 521 F.2d at 157. Class Counsel believe that this case is wholly appropriate for class certification in the litigation context. However, there is always a risk that a Court would not find this action suitable for certification as a litigated class, or not find that it was suitable for litigation on a multi-state basis. Further, even if class certification were granted in the litigation context, class certification can always be reviewed or modified before trial, so "the specter of decertification makes settlement an appealing alternative." *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546, 585 (D.N.J. 2010); *see also Eggleston v. Chi. Journeyman Plumbers Local Union No. 130 U.A.*, 657 F.2d 890, 896 (7th Cir. 1981) ("a favorable class determination by the court is not cast in stone."). In other words, class litigation is inherently uncertain and subject to many twists and turns. Consequently, this factor weighs in favor of final approval.

g. **Defendant's Ability to Withstand Greater Judgment, Reasonableness of the Settlement in Light of the Best Possible Recovery and All Attendant Risks of Litigation**

The last three *Girsh* factors are the reasonableness of the settlement in light of (i) defendant's ability to withstand a greater judgment, (ii) the best possible recovery, and (iii) all the attendant risks of litigation. These factors, too, support approval of this Settlement and its significant benefits.

While there is no dispute that Defendant has ample resources, countless settlements have been approved where a settling defendant has had the ability to pay greater amounts, and the Third Circuit has noted that this fact alone does not weigh against settlement approval. *See, e.g., Warfarin Sodium II*, 391 F.3d at 538. This factor is generally neutral when the defendant's ability to pay greatly exceeds the potential liability, and was not a factor in settlement negotiations. *CertainTeed*, 269 F.R.D. at 489 ("because ability to pay was not an issue in the settlement negotiations, this factor is neutral"); *Warfarin Sodium II*, 391 F.3d at 538 ("fact that [defendant] could afford to pay more does not mean that it is obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached"); *Bredbenner*, 2011 WL 1344745, at *15 ("courts in this district regularly find a settlement to be fair even though the defendant has the practical ability to pay greater amounts").

More importantly, the court must "measure [] the value of the settlement itself to determine whether the decision to settle represents a good value for a relatively weak case or a sell-out of an otherwise strong case." *GM Trucks*, 55 F.3d at 806. The Third Circuit further stated in *GM Trucks*:

> [I]n cases primarily seeking monetary relief, the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement .... The evaluating court must, of course, guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is

a compromise, a yielding of the highest hopes in exchange for certainty and resolution.

*Id.*

Defendant has the resources to vigorously litigate the claims in this case, and has presented considered positions to oppose the theories of liability and class certification. Indeed, at both junctures – at class certification and at trial – the Class would face what may amount to an all-or-nothing proposition. The Settlement, however, provides immediate and substantial cash benefits to the Class, as the class recovery represents, at a minimum, 100% of the calculated losses, and depending on defenses asserted by TD Bank, could equate to as high as 200% of the calculated losses.

Overall, the *Girsh* factors militate strongly in favor of approving the proposed Settlement. The Settlement allows a substantial real recovery for all Class Members now, rather than waiting for years for a recovery which might be more than the amount of the Settlement, but where there is a substantial risk of recovering nothing. Class Counsel has made a full evaluation of the relevant facts and law and believe that, under all of the facts and circumstances, the Settlement is not only fair and reasonable, but represents a significant victory for the Class.

### 2. The Relevant *Prudential* and *Baby Products* Factors Also Support Settlement

The Third Circuit has articulated other factors that can be relevant to the evaluation of some, but not all, class settlements. In *Prudential*, the Third Circuit identified several additional factors that "are illustrative of additional inquiries that in many instances will be useful for a thoroughgoing analysis of a settlement's terms." *In re Pet Food*, 629 F.3d at 350. Those factors are the following:

> [1] [T]he maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific

knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; [2] the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; [3] whether class or subclass members are accorded the right to opt out of the settlement; [4] whether any provisions for attorneys' fees are reasonable; and [5] whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Prudential*, 148 F.3d at 323. Although not all of the *Prudential* factors are relevant to approval of the proposed Settlement, those that are weigh in favor of final approval. First, the underlying substantive issues in this case are mature. As discussed above, there has been significant discovery on the merits, and Class Counsel is aware of the complexity and risks inherent in a trial on the merits. Second, all individual Settlement Class Members are being treated fairly, as the settlement fund is being allocated such that each class member receives damages based on the total dollar amount of his or her Penny Arcade transactions conducted during the Class Period. Third, as discussed above, Settlement Class Members were provided with robust notice and were provided with the opportunity to opt-out. Fourth, the fees requested are reasonable, as more fully discussed in Class Counsel's motion for attorneys' fees filed concurrently herewith.[9] Finally, the claims process is simple and straight-forward – in fact, most Settlement Class Members are not required to do anything and are eligible for an automatic payment. The minority of the Settlement Class Members who filed Claim Forms had ample time to seek assistance, if necessary, and to complete the Claim Form.

---

[9] Class Counsel is aware of one individual action pending in the Superior Court of New Jersey *Fay v. TD Bank*, wherein Fay is asserting individual claims identical to the class claims herein. Class Counsel has spoken with Counsel for Fay and Fay's Counsel has stated Fay intends to partake in the benefits of this Action. Also, Fay was provided with Notice of the Settlement and had the opportunity, if Fay wished, to opt out or object to proposed settlement, which Fay did not. See DeNittis Dec at ¶47.

Finally, the Third Circuit added an additional factor in *In re Baby Prods. Antitrust Litig.*, in which it examined the degree to which a proposed settlement provided a "direct benefit" to the class. 708 F.3d at 174; *see also McDonough v. Toys R. Us, Inc.*, 80 F. Supp. 3d 626, 650-51 (E.D. Pa. 2015) (discussing "*Baby Products* factor"). Here, Class Members who do not request exclusion either automatically receive a direct benefit from the Settlement or fill out a Claim Form to receive a direct benefit from the Settlement. Moreover, as discussed above, the Settlement allows for a recovery that that exceeds the net undercount in each of TD Bank's tests and Plaintiffs' tests, which is an exceptionally fair and reasonable result. For all the foregoing reasons, the proposed Settlement satisfies the factors articulated by the Third Circuit and should be approved as fair, reasonable, and adequate.

## IV.   THE NOTICE PROGRAM IS CONSTITUTIONALLY SOUND AND FULLY IMPLEMENTED

To protect the rights of absent members of the Class, the Court must ensure that all Class Members who would be bound by a class settlement are provided the best practicable notice. *See* Fed. Rule Civ. P. 23(e)(1)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Both the content and the means of dissemination of the notice must satisfy the "best practicable notice" standard.

The MANUAL FOR COMPLEX LITIGATION provides that notice of a class settlement should: define the class; describe clearly the options open to the class members and the deadlines for taking action; describe the essential terms of the proposed settlement; disclose any special benefits provided to the class representatives; provide information regarding attorneys' fees;

Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement; explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations; provide information that will enable class members to calculate or at least estimate their individual recoveries; and prominently display the address and phone number of class counsel and the procedure for making inquiries. MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.312 (2004); *see also Cendant I*, 109 F. Supp. at 254. The form and manner of Notice was negotiated and agreed upon by the Parties, approved by this Court and disseminated by GCG meets all of these requirements.

Furthermore, as set forth in the Affidavit of Compliance with Notice Requirements and Report of Exclusion and Objections due to be filed on December 26, 2017, the Notice Program, as approved by this Court and implemented by GCG, was in conformance with Rule 23(e)(1)(B), and the best practicable notice under the circumstances. The Notice Program ultimately included:

a) direct mail and email notice to a total of 5,048,264 potential Settlement Class Members for whom mailing or email addresses were included in the Class Data;

b) print notice once in *People* magazine;

c) targeted digital advertisements on the Internet;

d) a settlement website; and

e) a toll-free information number.

As part of the direct notice, GCG mailed, by United States Postal Service ("USPS") first class mail, 2,360,980 of the Court-approved Postcard Notices to the Settlement Class Members for whom a mailing address, but no valid email address, was provided in the class data. As of November 27, 2017, a total of 10,789 Postcard Notices were re-mailed as a result of forwarding

addresses provided to GCG by the USPS, and/or new addresses located through an advanced address search.  A total of 139,301 Postcard Notices were returned as undeliverable without forwarding addresses for which a new address could not be located through an advanced address search.  GCG also sent 2,687,284 Postcard Notices via e-mail to Settlement Class Members for whom a complete name and e-mail address was included in the class data.  Of those e-mailed notices, 37,885 were returned as undeliverable (a "bounce back").  Any Settlement Class Members whose Emailed Notice attempt resulted in bounce back was sent a Postcard Notice by U.S. Mail.

The Publication Notice included a combination of print publication and targeted internet banner advertising, the dedicated Settlement Website, and a toll-free number where Settlement Class Members could obtain relevant information about the Settlement.  The Publication Notice was inserted once in *People* magazine's August 1, 2017 issue.  The average circulation for the above referenced publication is 3,415,411.  In total, the banner advertisement campaign delivered over 56,136,620 impressions or opportunities for potential Settlement Class Members to click on the banner advertisement and view the Settlement Website.  As of November 27, 2017, the Settlement Website received 227,027 visitors and the Settlement toll-free number received 23,536 calls.

Lastly, GCG identified and recorded all requests for exclusion from the Settlement Class.  As of November 27, 2017, GCG received a total of 395 timely requests for exclusion relating to 521 Settlement Class Members.

In sum, as will be confirmed in the Affidavit of Compliance with Notice Requirements and Report of Exclusion and Objections due to be filed on December 26, 2017, the Notice Program implemented by GCG fulfilled the requirements of due process and those of Rule 23(c)(2).

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an Order granting final approval of the Settlement.


Dated: December 19, 2017

    */s/ Stephen P. DeNittis*
Stephen P. DeNittis, Esquire
**DENITTIS OSEFCHEN, P.C.**
525 Route 73 North – Suite 410
Marlton, New Jersey 08053
*On behalf of Plaintiffs David Spector, Regina Filannino-Restifo*

And

Jeffrey Smith, Esquire
**WOLF HALDENSTEIN ADLER
    FREEMAN & HERZ, LLP**
270 Madison Avenue
New York, NY 10016
*On behalf of Plaintiff Regina Filannino-Restifo*

Bruce Heller Nagel, Esquire
Robert H. Solomon, Esquire
Greg M. Kohn, Esquire
**NAGEL RICE, LLP**
103 Eisenhower Parkway
Roseland, New Jersey 07068
*On behalf of Plaintiffs Christine Krulan, David Diaz and Ryan Franco*

Michael Elliot Criden, Esquire
Lindsey Caryn Grossman, Esquire
Kevin Bruce Love, Esquire
**CRIDEN & LOVE, P.A.**
7301 SW 57th Court – Suite 515
South Miami, FL 33143
*On behalf of Plaintiff Juan Carlos Macias*

John D. Radice, Esquire
Kenneth B. Pickle, Esquire
**RADICE LAW FIRM, P.C.**

34 Sunset Boulevard
Long Beach, NJ 08008
*On behalf of Plaintiff David McEnerney*

Jeffrey H. Squire, Esquire
Lawrence P. Eagel, Esquire
David J. Stone, Esquire
**BRAGAR EAGEL & SQUIRE, P.C.**
885 Third Avenue – Suite 3040
New York, NY 10022
*On behalf of Plaintiff Jeffrey Feinman*

Michael J. DeBenedictis, Esquire
**DeBENEDICTIS & DeBENEDICTIS**
20 Brace Road – Suite 350
Cherry Hill, NJ 08034
*On behalf of Plaintiff Nona Luce*